UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

WAYNE KENNETH AUGE, II                                 Case No. 14-10443-ta11
a/k/a WAYNE K. AUGE, M.D.,

       Debtor.

THE NORTHERN NEW MEXICO
ORTHOPAEDIC CENTER, P.C.,

       Plaintiff,

v.                                                                              Adversary No. 14-1049 t

WAYNE KENNETH AUGE, individually and as
trustee of the COVALENT GLOBAL TRUST
u/t/i dated 12/01/03, AUXESIS HOLDINGS
LIMITED PARTNERSHIP, and OPERON, INC.,

       Defendants.

## **MEMORANDUM OPINION**

       Before the Court is whether to grant plaintiff Northern New Mexico Orthopaedic Center, P.C.'s ("NNMOC's") request for reimbursement of expenses, made under Fed.R.Civ.P. 37(a)(5).[1] The motion has been pending since October 13, 2014, while the parties attempted to work out their differences in document production. For the most part they have been successful in doing so; the primary remaining dispute is whether two of the defendants should pay NNMOC's expenses incurred to compel compliance with the discovery rules. For the reasons set forth below, the Court concludes that NNMOC's reasonable expenses should be reimbursed.

---

[1] References to Fed.R.Civ.P. 37 include Bankruptcy Rule 7037.

I.   FINDINGS OF FACT

The Court makes the following findings of fact,[2] based on the docket of this adversary proceeding, the docket in the main bankruptcy case,[3] the documents admitted into evidence at hearings on the Motion, and the statements of counsel:

NNMOC filed a complaint initiating this adversary proceeding on April 9, 2014. The 50-page complaint has 10 exhibits, comprising an additional 98 pages. The amount in controversy exceeds $3,000,000.

On April 28, 2014, NNMOC served its First Request for Production of Documents ("RFP") on each of Auxesis Holdings Limited Partnership ("Auxesis") and Operon, Inc., a New Mexico corporation ("Operon") (together, "Defendants"). Each RFP contained 15 requests. Twelve of the requests have between two and 31 subparts. The RFPs are very detailed, thorough, and exhaustive.

Defendants served their responses to the RFPs on June 27, 2014.[4] In each case the entire response was:

> Defendant objects to the discovery requests on grounds they are oppressive, unduly burdensome, irrelevant and beyond the scope of discovery. Among other things there is no temporal limitation. Without waiving this objection Defendant has provided to Plaintiff electronic copies of many documents.

---

[2] To the extent any finding of fact is construed as a conclusion of law, it is adopted as such, and vice versa. The Court may make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

[3] In making these findings the Court took judicial notice of the docket of this adversary proceeding. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir.1979) (holding that a court may, sua sponte, take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir.1999) (citing Fed.R.Evid. 201 and concluding that "[t]he bankruptcy court appropriately took judicial notice of its own docket"); *In re Quade*, 496 B.R. 520, 524 (Bankr. N.D. Ill. 2013), *affirmed*, 498 B.R. 852 (N.D. Ill. 2013) (a "bankruptcy court [is authorized] ... to take judicial notice of its own docket").

[4] This information is taken from the certificate of service at the end of the responses. The responses themselves were not filed with the Court, nor were any certificates of service.

The documents Defendants produced initially (a "large number" according to NNMOC) were not organized in any fashion, nor was there any indication which documents pertained to which request for production.

Although Defendants asserted the attorney-client privilege for certain of the documents requested, they did not provide a privilege log. Instead, each Defendant attached to their response the following:

### PRIVILEGE LOG

Defendant . . . has identified a large number of ([___] documents)[5] correspondence (emails and regular mail letters) with counsel that are responsive to Plaintiff's discovery requests, but for which Defendant claims the attorney client privilege and the work product privilege.

NNMOC's counsel sent a lengthy, detailed e-mail to Defendants' counsel on September 21, 2014, outlining why she believed Defendants' responses were deficient. In general, she asserted that the responses and document production were defective because the responses did not respond by item or category; the objections were improper "blanket" objections; the documents produced were not organized or cross-referenced; and the privilege log was inadequate. The e-mail represented a good-faith effort to obtain adequate disclosure without court action. There is no evidence that Defendants' counsel responded to the e-mail in writing.

NNMOC filed the Motion to Compel Production of Documents From Auxesis Holdings Limited Partnership and Operon, Inc. on October 13, 2014, doc. 41 (the "Motion"). In the Motion, NNMOC asked for the following relief:

    a. An order compelling Defendants to promptly provide compliant written responses to the requests for production;

---

[5] Auxesis listed 196 documents, while Operon listed 135 documents.

-3-

b. An order compelling Defendants to produce all documents requested that are in their possession, custody or control; and

c. Reimbursement of its reasonable expenses incurred in obtaining the order, including attorneys' fees.

Defendants never responded to the Motion in writing.

The Court held a scheduling conference in the adversary proceeding on October 20, 2014. Discovery issues were briefly addressed, and counsel for Defendants stated that he was "trying to dig into the [Motion] and hopefully get [the Motion] resolved before it gets set for hearing."

The Court set a preliminary hearing on the Motion for November 18, 2014. On November 17, 2014, counsel for Defendants provided NNMOC with an initial index listing the documents produced and the document requests to which they related. No privilege log was provided and some responsive documents still had not been produced.

At the preliminary hearing, the Court addressed Defendants' incomplete responses. Counsel for Defendants stated that he thought he "should do a much more complete and better response." The Court instructed counsel for Defendants to complete an item-by-item, detailed response including specific objections, explanations for any missing or nonexistent documents, and a detailed privilege log. The Court mentioned that an award of fees may be required under Bankruptcy Rule 7037.

During a final hearing on disclosure statements held in the main bankruptcy case on February 3, 2015, discovery in this adversary proceeding was again addressed. Counsel for Defendants admitted that document production still was incomplete.

NNMOC's counsel sent an e-mail to Defendants' counsel on February 6, 2015, asking that Dr. Auge sign an affidavit that the documents produced in response to the RFPs represent all of the responsive documents in the custody or control of Auxesis, Operon, and Auge.[6] A proposed draft affidavit was attached that refers to, inter alia, spreadsheets of the documents produced.

The Court held a final hearing on the Motion on February 9, 2015. At the hearing, counsel agreed that Dr. Auge had not signed an affidavit relating to the documents that had been produced. Defendants' counsel did not object to such an affidavit being signed, but stated that the form of affidavit was still being discussed. The Court gave Defendants' counsel ten days to provide a signed affidavit to opposing counsel. The Court did not rule on a specific form of affidavit.

Defendants gave a signed affidavit to NNMOC on February 20, 2015. The affidavit does not include a list of documents produced, although paragraph 6 of the affidavit refers to an unidentified spreadsheet or similar document. In the affidavit Dr. Auge states "I have made a thorough search of my records and the records of Covalent, Operon and Auxesis. I represent that the documents produced are all the documents and records in the possession, custody or control of Auxesis, Operon, Covalent and myself that are responsive to these discovery requests."

Defendants produced 50 additional responsive documents to NNMOC over the weekend of March 14-15, 2015.

The Court held a continued final hearing on the Motion on March 16, 2015. At the hearing, counsel for the parties stated that all disputes had been resolved except whether Dr.

---

[6] Dr. Auge is the general partner in Auxesis and was the president, secretary, and treasurer of Operon.

Auge should be required to attach a list of produced documents to his affidavit, and whether NNMOC should be reimbursed for its expenses incurred prosecuting the Motion.

II.     DISCUSSION

A.     The Motion to Compel.

The Motion is well taken and will be granted to the extent any relief is still needed. Defendants' initial written responses, privilege logs, and production were inadequate. Defendants have fixed most of the problems in the eight months since serving their initial responses. Most or all of the remedial work was done after the Motion was filed.

1.     Defendants' RFP Responses. Defendants' written responses to the RFPs clearly were deficient. Fed.R.Civ.P. 34(b)(2)(B) provides that "for each item or category, the response must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons." Defendants did not comply with this requirement. Similarly, Fed.R.Civ.P. 34(b)(2)(C) requires that "an objection to part of a request must specify the part and permit inspection of the rest." Defendants did not comply. Furthermore, Defendants never filed certificates of service of their responses, as required by LBR 7026-1(c).

The Court gathers from the most recent hearing that Plaintiff is now satisfied with Defendants' written responses. The Court has no evidence that amended responses were ever served, and no certificates of service, amended or otherwise, have ever been filed. What is clear is that any remedial work on the initial responses was not done until after NNMOC filed the Motion.

2.     Privilege Logs. Defendants' initial privilege logs were seriously deficient. A privilege log should contain, for each document claimed as privileged, the author of the

document, any documents or materials attached, all recipients, the date, and a description of the contents in sufficient detail to reveal why it is privileged. *See Pandeosingh v. Am. Med. Response, Inc.*, 2014 WL 5488415, at *2 (D. Colo. 2014), citing *Wildearth Guardians v. U.S. Forest Serv.*, 713 F. Supp. 2d 1243, 1266–67 (D. Colo. 2010). *See also* Fed.R.Civ.P. 26(b)(5)(A):

> (A) *Information Withheld.* When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i) expressly make the claim; and
>
> (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Defendants' privilege logs had none of the required information. Like the discovery responses, the Court gathers from the comments of NNMOC's counsel at the March 16, 2015 hearing that the dispute over production of privileged documents has been resolved. Resolution appears to have occurred after the Motion was filed.

3. <u>The Method of Production</u>. Fed.R.Civ.P. 34(b)(2)(E)(i) provides that "[a] party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Initially, Defendants did neither. Instead, they electronically produced[7] a "large number" of documents without organizing or categorizing them, and without stating which document production request they responded to. In the months after the Motion was filed, these deficiencies apparently were addressed.

---

[7] Document production was done using the "Dropbox" software program, which is designed to allow storage and sharing of electronically stored documents. NNMOC did not take issue with Defendants' use of this program, or with the electronic format of the documents produced.

4. <u>Dr. Auge's Affidavit</u>. NNMOC asked defendant Wayne Auge to sign an affidavit that he has produced all responsive documents in his and Defendants' custody or control. Dr. Auge signed an affidavit, but did not refer to a list of the documents produced. NNMOC asks that Dr. Auge be ordered to amend his affidavit to refer to such a list.

Nothing in the rules of civil procedure, bankruptcy rules, or local rules requires such a reference, or even requires an affidavit at all. The Court believes an affidavit is a good idea in this case, as is the proposal to attach a list of the produced documents, thereby reducing the risk of a dispute about whether a document was produced. However, the Court will not require Dr. Auge to attach a list of produced documents to his affidavit if he chooses not to do so.[8]

B. <u>Payment of Expenses</u>.

The Court must determine whether to order Defendants to pay NNMOC's expenses incurred in connection with the Motion. Fed.R.Civ.P. 37(a) provides in pertinent part:

> (1) *In General.* On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.
>
> ....
>
> (4) *Evasive or Incomplete Disclosure, Answer, or Response.* For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.
>
> *(5) Payment of Expenses; Protective Orders.*
>
>   *(A) If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion,

---

[8] If Dr. Auge elects not to attach a list of produced documents to his affidavit, and if reference to such a list would have resolved a dispute about whether a document was produced, then the Court likely would err in NNMOC's favor when ruling on any such dispute.

the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

In *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673 (10th Cir. 2012) the Tenth Circuit stated:

> Fed.R.Civ.P. 37 contains two separate provisions that allow, and often require, the district court to award attorney fees for discovery misconduct. Under Rule 37(a)(5) the district court must ordinarily order a party to pay the opposing party's reasonable expenses, including attorney fees, incurred in filing or opposing a discovery motion if the opposing party's discovery motion is granted, the party provided discovery only after a motion to compel was filed, or the party's discovery motion was denied. *See* Fed.R.Civ.P. 37(a)(5)(A), (B); *id.* 26(c)(3). Rule 37(b) requires the district court ordinarily to order a party that has failed to obey a discovery order "to pay the reasonable expenses, including attorney's fees, caused by the failure." *Id.* 37(b)(2)(C).

688 F.3d at 678. The court went on to say:

> As stated in the 1970 advisory committee's note to Rule 37(a)(4):
>
> [T]he rules should deter the abuse implicit in carrying or forcing a discovery dispute to court when no genuine dispute exists. And the potential or actual imposition of expenses is virtually the sole formal sanction in the rules to deter a party from pressing to a court hearing frivolous requests for or objections to discovery.

*Id.* at 680.

"[T]he [court] ordinarily must order a party to pay the opposing party's reasonable expenses, including attorney fees, incurred in filing or *opposing* a discovery motion, if the opposing party's discovery motion is granted, the party provided discovery only after a motion to

compel was filed, or the party's discovery motion was denied." *Gassaway v. Jarden Corp.*, 2013 WL 6729772, at *4 (D. Kan. 2013) (emphasis in original).

"The rule provides that a court shall require the party whose conduct necessitated the motion to pay the other party's expenses and fees unless the failure to respond was substantially justified or an award of expenses would otherwise be unjust." *Baker v. Sizzling Platter, Inc.*, 2007 WL 4302926, at *3 (D. Utah 2007). *See also Armijo v. Intel Corp.*, 2007 WL 5232455, at *3 (D.N.M. Aug. 4, 2007) (awarding fees under Rule 37(a)).

The Court concludes that an award of expenses is required in this case. When NNMOC filed the Motion, Defendants' written responses to the RFPs, privilege logs, and document production were quite deficient. Defendants have admitted as much. While Defendants' efforts to provide discovery became noticeably more diligent over time, Rule 37 is clear that a party's deficient discovery response, if not cured promptly after the Rule 37(a)(1) "good faith" conference, normally will result in payment of reasonable expenses to compel compliance.

Many if not all of Defendants' shortcomings in responding to the RFPs were corrected after NNMOC filed the Motion. Defendants' position in the discovery dispute was not substantially justified. There are no circumstances in this matter that would make an award of expenses unjust.

Just as the Court may well have been required to award Defendants their expenses had the Motion been denied, *see* Fed.R.Civ.P. 37(a)(5)(B), the Court is required to award expenses here. Rule 37 is designed to instill caution and diligence in litigants, and also to limit the Court's discretion to some extent. The clear intent behind the rule is to force litigants to take the discovery rules and obligations, and the rule's expense-shifting provisions, seriously.

-10-

Case 14-01049-t    Doc 116    Filed 03/31/15    Entered 03/31/15 17:01:18 Page 10 of 11

The Court will give NNMOC time to submit a bill of expenses, including attorney fees. The Court also will give Defendants an opportunity to respond.

### III. CONCLUSION

The Motion is well taken, including the request for an award of the reasonable expenses NNMOC incurred in compelling discovery. By separate order, the Court will grant the motion as set forth above and set a schedule for submitting a bill of expenses, including attorney fees.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: March 31, 2015

Copies to:

Julia B. Rose
P.O. Box 2503
Santa Fe, NM 87504

Daniel Andrew White
320 Gold Ave. SW, Ste. 300A
Albuquerque, NM 87102

Michael K Daniels
P.O .Box 1640
Albuquerque, NM 87103

Inbal Hasbani
300 North LaSalle, Floor 24
Chicago, IL 60654

Arin Berkson
3800 Osuna Road, NE, Ste. 2
Albuquerque, NM 87109